IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

REBECCA GLORIMAR COLON-MURIEL,

    Plaintiff,

    v.                                          CIVIL NO. 05-2004 (RLA)

ASOCIACION DE SUSCRIPCION
CONJUNTA DEL SEGURO DE
RESPONSABILIDAD OBLIGATORIO,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, ASOCIACION DE SUSCRIPCION CONJUNTA DEL SEGURO DE RESPONSABILIDAD OBLIGATORIO ("ASC"), has moved the Court to enter summary judgment dismissing the instant complaint. The Court having reviewed the arguments presented by the parties as well as the documents submitted therewith hereby finds defendant is entitled to the relief requested.

### BACKGROUND

Plaintiff instituted this action alleging that defendant's failure to relocate her within the company when her position was eliminated as part of a reorganization was due to her having previously served as a federal juror as well as to the fact that she was pregnant at the time of her discharge. Plaintiff further claims that she was not subsequently rehired for these same reasons.

Plaintiff asserts a claim based on her jury service premised on the Jury System Improvements Act of 1978, 28 U.S.C. § 1875. The

CIVIL NO. 05-2004 (RLA)                                              **Page 2**

---

pregnancy discrimination claims are asserted under Title VII of the Civil Rights Act 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e(k), as well as two local provisions, Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 (2002) ("Law 100") and Law No. 3 of March 13, 1942, P.R. Laws Ann. tit. 29, § 469 (2002) ("Law No. 3"). Additionally, plaintiff included a retaliation claim under Puerto Rico's Act 69 of July 6, 1985, as amended, P.R. Laws Ann. tit. 29, §§ 1321-1341 (2002) ("Law 69") and for unjust termination pursuant to Law 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a-185k (2002) ("Law 80").

## SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of

Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am.
Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S.
1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).  A fact is material if
it might affect the outcome of a lawsuit under the governing law.
Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir.
1995).

      "In ruling on a motion for summary judgment, the court must view
'the facts in the light most favorable to the non-moving party,
drawing all reasonable inferences in that party's favor.'" Poulis-
Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v.
Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

      Credibility issues fall outside the scope of summary judgment.
"'Credibility determinations, the weighing of the evidence, and the
drawing of legitimate inferences from the facts are jury functions,
not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc.,
530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe,
Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in
credibility assessments."); Simas v. First Citizens' Fed. Credit
Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations
are for the factfinder at trial, not for the court at summary
judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st
Cir. 1998) (credibility issues not proper on summary judgment);

CIVIL NO. 05-2004 (RLA)                                    **Page 4**

Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Further, any testimony used in a motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. Rule

56(e) specifically mandates that affidavits submitted in conjunction with the summary judgment mechanism must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 16 (1st Cir. 2006); Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000). *See also*, Quiñones v. Buick, 436 F.3d 284, 290  (1st Cir. 2006) (affidavit inadmissible given plaintiff's failure to cite "supporting evidence to which he could testify in court"). The affidavit must contain facts which are admissible in evidence. Lopez-Carrasquillo v. Rubianes, 230 F.3d at 414. "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

### THE FACTS

The following facts are deemed uncontested for purposes of the motion before us.

Defendant ASC is a joint underwriting association created pursuant to Puerto Rico's Law No. 253 of December 27, 1995, P.R. Laws Ann. tit. 26, §§ 8051-8061 (1997) ("Law 253"). It commenced operations in 1997.

A joint underwriting association is a private insurance company usually created by law composed of designated insurers and intended to solve the insurance needs in a specific line of insurance.

CIVIL NO. 05-2004 (RLA)                                          Page 6

Pursuant to Law 253, the ASC was created to provide residual coverage policies for compulsory third-party liability as mandated by Puerto Rico's transit law.

The main functions of the various departments and divisions comprising ASC are: processing, evaluating, verifying and paying claims for vehicle damages caused by its insureds while driving. The policy is issued at the time a vehicle owner renews its registration at the Department of Transportation. In 2005, ASC handled over 350,000 claims and paid in excess of $163 million dollars for claims for damages to vehicles.

As of September 2004, ASC had approximately 300 employees distributed between its central office and 16 adjusting centers located throughout the Island.

In 2003, ASC retained IBM Consulting Services ("IBM"), an independent consulting firm, to conduct an assessment of its technological capabilities and needs, which also included the review of the procedures used by the company to manage and process claims as well as the other related functions which provide support to such processes. After conducting its review, in March 2004, IBM issued a report entitled "Strategic Alignment and Claims Process". As part of its findings, IBM concluded that the claims processing was slow and characterized by duplicity of functions, cumbersome procedures and redundant quality control.

Among the many recommendations made by IBM, the most relevant to the controversies at hand was the need to revamp the entire claims adjusting procedure, introduce new technology and eliminate certain functions that were being carried out at the central level of the company which were deemed duplicative.

Based on these recommendations as well as the need to improve productivity and quality of services, increasing the average time for handling claims and for other legitimate business reasons, in 2004 the company decided to restructure itself and introduce a new claims management system. The new system, known as the Intelligent Claims System or SIR for its Spanish acronym, was implemented in various stages beginning in September 2004. The introduction of SIR was extremely effective and achieved - among other benefits to the company and its clients - a payroll reduction, a more efficient claims management system and a reduction of the average time for handling claims from approximately 30 days to only five.

The introduction of SIR entailed the elimination, modification and/or transformation of numerous steps in the claims management process. This, in turn, entailed eliminating functions that were previously performed by numerous employees, including almost all of the employees which received training from the individual appointed to the Trainer position. Among the functions eliminated at the central level or transferred to the local adjusting centers with the implementation of SIR, were all customer attention, coverage

verification and quality, digitalization of files (including photos, reports, estimates, etc.) and duplicated quality verification. As part of the new system, the management and flow of data was changed from a system of electronically filing paper documents to one generating electronic data from the very beginning of the claims process. The system was also decentralized. The implementation of SIR, based on the IBM recommendations, implicated the replacement of the existing system known as RUMBA.

As a consequence of the elimination of functions, mostly at the central level, the adoption of SIR and the new computer and imaging technology, the company was restructured. This process entailed the elimination of the following occupational groups or positions: Claims Examiner (7/7), Coverage Quality (13/13), Coverage Analyst (7/7), Letter Clerk (2/2), Messenger (1/3), Check Verification Clerk (4/4), Staple Clerk (1/1) Data Entry Technician at various locations (20/20), Scanner Operator (3/4), Receiving Clerk (2/2), Reimbursement Analyst (3/3) Trainer (1/1), Code Compliance Specialist (1/1), Photo Processing Clerk (1/1), Document Registrar (3/3) and Supplies Clerk (1/1).

Plaintiff commenced working for ASC in 1997.

Plaintiff was approved leave for jury duty on the following dates: 6/24-25/04; 7/16-20/04; 7/29-30/04; 8/5-9/04; 8/10-12/04.

In September 2004, plaintiff occupied the sole position of Trainer at ASC's Central Office. She held this position since June

**CIVIL NO. 05-2004 (RLA)**                                    **Page 9**

2000. The Trainer position was assigned to the Operations Division. Lourdes Colon, Operations Supervisor, was plaintiff's direct supervisor at the time she was separated from the company.

The main duties corresponding to the Trainer position were to provide basic training on the previous operative system known as RUMBA, SRO coverage principles and phone call handling to new recruits or transferred employees. Training was given to employees occupying the following positions: Claims Examiner, Coverage Quality, Coverage Analyst, Data Entry Technician and Phone Operator.

Except for the Phone Operator position, all other positions plaintiff provided training to were eliminated by the company as part of its restructuring process and with the introduction of new mechanisms. Hence, the need to train employees who formerly occupied those positions ceased. Even though the Trainer had some training functions with respect to the Phone Operators, the only position that was not eliminated, the reduction in the volume of work and in the number of positions this occupational group was expected to experiment with the introduction of SIR further limited the Trainer's duties. Once the company was restructured and the SIR introduced there was no justification for a full-time Trainer position.

Even prior to the SIR being implemented, plaintiff was only partially performing the duties assigned to the Trainer position because there was not enough work to justify a full-time position. Given the scarcity of training duties, plaintiff was assigned tasks

**CIVIL NO. 05-2004 (RLA)**                                    **Page 10**

outside the scope of her Trainer position by Ms. de Leon, her supervisor.

The training provided by plaintiff to the employees occupying the aforementioned positions was limited to the use of the computer operative system known in the company as RUMBA. When SIR was implemented in September 2004, RUMBA was discarded altogether and no longer used in the company's operations.

Due to the elimination of functions and positions in ASC as a consequence of the company's restructuring and the implementation of SIR, on September 28, 2004, a reduction in force ("RIF") consisting of the separation of 30 employees from their positions within the company was effected.

### JURY SYSTEM IMPROVEMENTS ACT

Persons called to provide jury service in federal courts are granted protection in their employment. Specifically, 29 U.S.C. § 1875(a) provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." The statute allows for the imposition of damages, injunctive relief and a civil penalty, § 1875(b), as well as payment of attorney fees and expenses, § 1875(d)(2), in the event the affected employee prevails in his claim.

CIVIL NO. 05-2004 (RLA)                                          Page 11

The policy behind the statute is grounded on the need to guarantee the jury system can count on the necessary prospects to meet its vital role in the administration of justice in view of the difficulties inherent to a business caused by the absence of its personnel.

> In recognition that jury service is often inconvenient to both employers and employees, the Jury Act assists in the maintenance and independence of the judicial system by giving judicial protection to those who are called upon to serve as jurors. This statute was designed to protect the juror from an employer who is hostile to the idea of our jury duty, or who believes that the interests of his business outweigh the obligation for jury service imposed by law. Under the statute, an employer has the duty to insure that his employees can report for jury duty without fear of reprisal.

Lucas v. Matlack, Inc., 851 F.Supp, 225, 230 (N.D.W.Va. 1993) (internal citations and quotation marks omitted).

Because of scarce precedent available under this statute, courts have looked at Title VII caselaw as guidance for disposing of cases filed for alleged breach of the protection afforded individuals for jury duty. See, i.e., Shaffer v. ACS Gov't Serv., Inc., 454 F.Supp.2d 330, 334 (D.Md. 2006) (retaliation); Lucas v. Matlack, Inc., 851 F.Supp 231, 233-34 (N.D.W.Va. 1994) (harassment).

CIVIL NO. 05-2004 (RLA)                                           Page 12

Plaintiff avers that her terms and conditions of employment were impacted by her jury duty. Additionally, she alleges that defendant did not relocate her within the company when her position was eliminated and subsequently refused to rehire her in reprisal for her absences from work in connection with her jury service. Hence, we shall apply the standard used for retaliation claims used in analogous Title VII suits to evaluate these claims.

No direct evidence of reprisal has been submitted. When only circumstantial evidence of discriminatory retaliation is available, the *McDonnel Douglas* burden-shifting analysis is also utilized. Hence, "plaintiff must make a prima facie showing of retaliation by presenting evidence that: (1) [she] engaged in protected conduct, (2) [she] was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and the adverse action." Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st 2003). *See also*, Moron-Barradas v. Dep't of Educ., 488 F.3d 472 (1st Cir. 2007); Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 15 (1st Cir. 2007); Freadman v. Metro. Prop. and Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007). "Once the plaintiff has made a prima facie showing of retaliation, the *McDonnel Douglas* burden-shifting approach is employed, and defendant must articulate a legitimate, non-retaliatory reason for its employment decision. If the defendant meets this burden, the plaintiff must show that the proffered legitimate reason is in fact a pretext and that the job action was

the result of the defendant's retaliatory animus." <u>Calero-Cerezo v.</u>
<u>U.S. Dep't of Justice</u>, 355 F.3d 6, 26 (1st Cir. 2004); <u>Wright v.</u>
<u>CompUSA, Inc.</u>, 352 F.3d 472, 478 (1st Cir. 2003); <u>Che v. Mass. Bay</u>
<u>Transp. Auth.</u>, 342 F.3d 31, 39 (1st Cir. 2003). Should the employer
advance a legitimate reason for its decision, "the ultimate burden
falls on the plaintiff to show that the employer's proffered reason
is pretext masking retaliation..." <u>Mesnick v. Gen. Elec. Co.</u>, 950
F.2d 816, 827 (1st Cir. 1991).

In order for plaintiff to succeed in her retaliation claim she
must prove that she was the object of an adverse employment action.
"To be adverse, an action must materially change the conditions of
plaintiff's employ." <u>Gu v. Boston Police Dep't</u>, 312 F.3d 6, 14 (1st
Cir. 2002). Additionally, in failure to hire retaliatory cases a
plaintiff must also show that he applied for a particular position
for which he was qualified. <u>Velez v. Janssen Ortho, LLC</u>, 467 F.3d
802, 807 (1st Cir. 2006).

Temporal proximity between the employer's awareness of the
protected activity and the challenged personnel action may also
constitute evidence of causation. <u>Calero-Cerezo v. U.S. Dep't of</u>
<u>Justice</u>, 355 F.3d 6, 25 (1st Cir. 2004). *See*, <u>Dressler v. Daniel</u>, 315
F.3d. 75, 80 (1st Cir. 2003) ("[T]he inference of a causal connection
becomes more tenuous with time."); <u>Mesnick</u>, 950 F.2d at 828
(observing that a nine-month period between the protected conduct and
adverse action suggested the absence of any causal connection).

CIVIL NO. 05-2004 (RLA)                                                    Page 14

For purposes of the motion before us, we shall assume that jury service qualifies as protected conduct. We must then examine whether plaintiff was subjected to any adverse personnel action as a result thereof and if so, whether there is a causal connection between these events and plaintiff's service as a juror.

There is no evidence that plaintiff's job or salary conditions were changed in any way during the time she served as a juror. Absences required by jury duty were authorized by plaintiff's supervisor and her salary paid in full with no deductions made either from her vacation or any other leave. Plaintiff alleges that Ms. de Leon, her supervisor, through her gestures somehow showed disapproval of her absences and also approached plaintiff to see if she could be excused from jury duty. However, these gestures and/or conversations without more, cannot be regarded as adverse for retaliation purposes.

Plaintiff further claims that the terms and conditions of her employment were impacted by her jury duty in that she was denied training opportunities. The evidence available on this issue is limited to one particular training on basic techniques of claims adjusting which defendant agreed to allow plaintiff to take at a later date.[1] We find this isolated incident insufficient to meet a basic element for an adverse personnel action, i.e., that it

---

[1]   The training could not be subsequently reprogrammed due to plaintiff's separation from the company as part of the RIF.

"materially change the conditions of plaintiff's employ." Gu, 312 F.3d at 14.

Additionally, plaintiff alleges that she was subjected to two adverse personnel actions which were motivated by her jury service. These are: defendant's failure to assign her to another position during the RIF and to rehire her subsequent to her discharge. As previously noted, it is plaintiff's burden to establish a causal connection between her jury service and the challenged retaliatory acts. Thus, there must be sufficient evidence for a reasonable juror to conclude that her jury duty was the proximate cause for the failure to relocate her within the company as well as the failure to subsequently rehire her.

As will be discussed in detail as part of the pregnancy discrimination claim, the procedure used by defendant for identifying which employees would fill the new positions resulting from the reorganization was based on a comparison between the functions and duties of the positions to be eliminated with those of the positions that would open up. Once the similarities between these two were identified, the employees to be relocated were selected according to their seniority within their respective job categories.

In support of her retaliation claim plaintiff alleges that she should have been given priority in the relocation process based on her overall seniority within the company as well as her educational and work experience. However, there is no evidence that these factors

were taken into consideration for any of the relocated employees. On the contrary, the only record available suggests that the analysis in all cases was limited to the functions and duties of each job category and the current qualifications of the persons occupying those positions at that particular time. Because of the *sui generis* nature of plaintiff's Trainer position no match was available to transfer her to a similar job opening as part of the reorganization process. Further, placing plaintiff in another job category would have proven detrimental to the seniority system already existing within that group.

Accordingly, we find there is no evidence pointing to a causal relationship between the failure to relocate plaintiff and her jury duty.

Additionally, plaintiff alleges retaliation for her jury service based on defendant's failure to rehire her for any of the positions that arose at the various ASC locations throughout the Island subsequent to the reorganization even though the company had represented that those laid off would have rehiring priority for the following six months, if qualified.

However, the uncontroverted evidence on record establishes that none of the employees separated due to the restructuring were considered for vacancies that opened during that period of time. According to Mr. Ruiz, positions arose in different adjustment centers throughout the Island during those months. Even though the

laid off persons were evaluated for those openings, they were all rejected because of their place of residence. The new positions were located outside the metropolitan area whereas all the laid off employees lived within the metropolitan area. In other words, plaintiff was treated no different than the other discharged employees none of whom had been called for jury duty.

Based on the foregoing, we find that plaintiff has failed to establish a causal relationship between her protected conduct and the alleged adverse personnel actions. Accordingly, her claim under the Jury System Improvements Act is **DISMISSED.**

### PREGNANCY DISCRIMINATION ACT

The Pregnancy Discrimination Act of 1978 extended the protection against discrimination afforded by Title VII to specifically include discrimination "on the basis of pregnancy". 42 U.S.C. § 2000e(k). "It is settled under Title VII that a employer may not discharge an employee based on the categorical fact of her pregnancy." Smith v. F.W. Morse, 76 F.3d 413, 424 (1st Cir. 1996). "An employer may discharge an employee while she is pregnant if it does so for legitimate reasons unrelated to her pregnancy." *Id.*

"A Title VII sex discrimination claim may be proven with direct evidence of discrimination, such as 'an admission by the employer that it explicitly took actual or anticipated pregnancy into account in reaching an employment decision.'" Santiago-Ramos v. Centennial

P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) (*citing* Smith v. Morse & Co.*,* 76 F.3d 413, 421 (1st Cir. 1996)).

Absent direct evidence of motive, pregnancy discrimination claims are subject to the *McDonnel Douglas* burden-shifting framework. Thus, in order to meet her prima facie burden, plaintiff "would have to show that (1) she was pregnant at the relevant time, (2) her job performance was satisfactory, but (3) her employer took some adverse employment action against her while (4) treating non-pregnant employees differently." Gorki v. New Hampshire Dep't of Corrections, 290 F.3d 466, 474-75 (1st Cir. 2002). *See also*, Snyder v. Yellow Transp., Inc., 321 F.Supp.2d 1127 (E.D.Mo. 2004) (prima facie burden met since sex and pregnancy factors taken in to consideration in decision to terminate plaintiff).

This *prima facie* showing is not onerous and once the plaintiff meets this burden, a presumption of discrimination arises and the employer must proffer a legitimate, nondiscriminatory reason for its actions. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254; 101 S.Ct. 1089; 67 L.Ed.2d 207 (1981). The burden at this second stage is one of production; it "can involve no credibility assessment." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509; 113 S.Ct. 2742; 125 L.Ed.2d 407 (1993). The burden of persuasion remains with the plaintiff at all times. Reeves, 530 U.S. at 142; St. Mary's Honor Center, 509 U.S. at 518; Hidalgo v. Overseas Condado Ins. Agencies, 120 F.3d 328, 334 (1st Cir. 1997). Furthermore, "[a]

defendant need not persuade the court that it was actually motivated by the proffered reason. The explanation provided must be legally sufficient to justify a judgment in its favor." Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988).

If the employer produces a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination vanishes or "drops out of the picture", Reeves, 530 U.S. at 143; St. Mary's Honor, 509 U.S. at 511, and the burden shifts back to the plaintiff to show that the employer's reasons are a mere pretext for discrimination. Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25-26 (1st Cir. 1997); Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994). During this third prong, the "plaintiff must do more that simply refute or cast doubt on the company's rationale", Medina-Muñoz, 896 F.2d at 9, but must show an impermissible discriminatory animus. LeBlanc v. Great Am. Ins. Co., 6 F.3d at 842; Vega v. Kodak Caribbean, Ltd., 3 F.2d 476, 479 (1st Cir. 1993).

However, in the context of a summary judgment, "'the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a factfinder as to pretext and discriminatory animus.'" Calero-Cerezo, 355 F.3d at 26 (citing Fennell v. First Step Design, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)).

CIVIL NO. 05-2004 (RLA)                                                    **Page 20**

In making its determination, the Court may not "sit as super personnel departments, assessing the merits or even the rationality of employers' non discriminatory business decisions." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991); Feliciano De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d at 8; Rodriguez-Cuervos v. Wal-Mart Stores, 181 F.3d 15, 22 (1st Cir. 1999).

"[Courts] do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the Pregnancy Discrimination Act does] not interfere." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988) (internal citations and quotation marks omitted).

In cases where employees are laid off as part of a downsizing policy, the fourth prong of the *McDonnell Douglas* prima facie test is modified to accommodate for the variant circumstances. Plaintiff needs to point to factors which evince that she was treated less favorably than persons outside the protected class in the application of the reduction in force plan. In situations involving reductions in force the last factor of the plaintiff's prima facie case will require instead evidence "that [a protected class member] was not treated neutrally in implementing the RIF, or... individuals [outside the protected class] were retained in the same position." Ruiz v. Posadas de San Juan Assoc., 124 F.3d 243, 248 (1st Cir. 1997). *See*

**CIVIL NO. 05-2004 (RLA)**                                              **Page 21**

---

*also*, <u>Currier v. United Technologies Corp.</u>, 393 F.3d 246, 254 (1st Cir. 2004) (fourth element of the prima facie case in a RIF situation requires evidence that "persons [outside the protected class] were retained in the same position or that the employer otherwise did not treat [protected factor] neutrally."); <u>Cruz-Ramos v. Puerto Rico Sun Oil Co.</u>, 202 F.3d 381, 384 (1st Cir. 2000) ("[evidence that] the employer retained... persons [outside the protected class] in the same position or otherwise failed to treat [the protected factor] neutrally in implementing the reduction in force."); <u>Am. Airlines, Inc. v. Cardoza-Rodriguez</u>, 133 F.3d 111, 123 (1st Cir. 1998) (citations and internal quotation marks omitted) ("[W]hen a employer implements a reduction-in-force, the [employee] may demonstrate either that the employer did not treat [the protected factor] neutrally or that... persons [outside the protected class] were retained in the same position.")

The fourth prong of the test differs slightly in cases stemming from reductions in force. In such situations, this prong may be satisfied by a showing that the employer, in the course of downsizing, did not treat [the protected factor] neutrally.

<u>Suarez v. Pueblo Int'l, Inc.</u>, 229 F.3d at 54 n.4.

"There is little doubt that an employer, consistent with its business judgment, may eliminate positions during the course of downsizing without violating Title VII even though those positions

are held by members of protected groups (pregnant women included)."
Smith v. Morse, 76 F.3d at 422. "[I]nsofar as Title VII is concerned,
an employer can hire or fire one employee instead of another for any
reason, fair or unfair, provided that the employer's choice is not
driven by race, gender, pregnancy, or some other protected
characteristic. The flip side of the coin, however, is that an
employer who selectively cleans house cannot hide behind convenient
euphemisms such as 'downsizing' or 'streamlining.' Whether or not
trimming the fat from a company's organizational chart is a prudent
practice in a particular business environment, the employer's
decision to eliminate specific positions must not be tainted by a
discrimininatory animus." *Id.* (internal citations omitted).

Even assuming that defendant was aware of plaintiff' pregnancy
when the personnel actions at issue were taken,[2] we find that this
claim is without merit.

Plaintiff concedes that the functions of the Trainer position
previously occupied by her were completely eliminated and that no one
is currently performing those duties. Hence, no challenge is being
made to defendant's decision to do away with this position altogether
as part of the RIF. Rather, plaintiff alleges that based on her

---

[2] Defendant disputes being aware of plaintiff's condition at the
time her position was eliminated and further contends that her
pregnancy was not evident then. According to plaintiff, she learned
about her pregnancy in June 2004 which she subsequently confirmed
though a blood test result on July 6, 2004. Plaintiff further
contends that she informed her supervisor of this fact.

seniority with the company as well as her educational and work experience she should have been selected to new positions opened during the reorganization process over persons less qualified and with less time with ASC.

The procedure used for relocation of persons occupying positions to be eliminated by the RIF was explained by Humberto Ruiz, defendant's Operational Manager in his deposition. According to the deponent, ASC's Operational Division carried out a comparative analysis of the duties of the positions being eliminated with those of the positions which would increase in number as a result of the implementation of the new system. Thereafter, the most senior employees within each of the eliminated occupational groups whose functions were similar to those of the new openings were retained or relocated in the new positions. In other words, the selection of which employees would be laid off was inverse to their seniority in each of the occupational groups or position affected as a result of the RIF.

Mr. Ruiz explained that the designation of the employees to be separated as a result of the RIF was made from a list of the occupants of the eliminated positions in inverse order of seniority by each occupational group after determining that: either they were occupying positions which did not match with the remaining ones (in which new openings would come up) or they had less seniority than the relocated employees.

CIVIL NO. 05-2004 (RLA)                                    **Page 24**

According to ASC, all separated employees occupied positions which were eliminated and no longer exist in the company's personnel organizational chart.

The employees whose positions were eliminated as a result of the September 2004 RIF but were retained by the company occupied the following positions prior to the implementation of the restructuring: Claims Examiners, Coverage Quality, Coverage Analysts, Reimbursement Analyst and Data Entry Technician.

Defendant argues that its decision to choose which employees from the eliminated occupational groups would be relocated was based exclusively on the similarity of the requisites, characteristics, functions and the skills required by the new positions opened in comparison with those in the existing occupational groups. For instance, the most senior employees of the Claims Examiner occupational group were retained as Adjusters - once they obtained the licence required by the Insurance Commissioner for this profession - due to the functional similarities between the two positions.

According to the testimony of Humberto Ruiz and Ivette Leduc, with two exceptions - based on protections afforded by law to the affected employees - all employees retained by ASC at the time of the RIF implementation had the most seniority in their respective occupational groups and were occupying positions with functional similarities to the ones they were relocated to.

CIVIL NO. 05-2004 (RLA)                                          **Page 25**

Plaintiff alleges this explanation is but a pretext to discriminate against her due to her pregnancy. In support of her discrimination claims plaintiff argues that defendant did not take into consideration that (1) she had more seniority in the company than those who were relocated; (2) she had experience at various other positions within the company; (3) she had worked as secretary/receptionist with other employers prior to joining ASC; (4) her educational background and (5) the fact that in her Trainer position she was also performing other functions.

However, according to Ruiz, the decision to relocate employees was based on a comparison between the duties, skills and requirements of the positions being eliminated with those of the new positions. Once the similarities of the duties of these two were established, the selection was based on seniority within the category being eliminated. Consideration was never given to the particular employee's prior positions, experience and/or educational background. In his deposition Ruiz stated: "The whole time, our analysis was in the positions that the persons held at that time. At no time did we evaluate it based on previous positions." Ruiz Depo. Tr. 28. "[W]hat was taken into account, in addition to seniority, were the skills they had, and they carried out in the current positions, [the] preparation that... they had based on [those] positions." Ruiz Depo. Tr. 29.

Plaintiff claims that defendant did not give any weight to her seniority nor did it consider her for alternate positions that she qualified for. However, plaintiff has proffered no evidence suggestive that criteria other than the current duties and skills attendant to the positions being eliminated were considered in the selection of persons to be relocated as a result of the RIF. This being so, the fact that defendant did not look into plaintiff's educational background and work experience outside her functions in the Trainer position in determining whether there was a "match" with a position opening cannot be considered as grounds for pregnancy discrimination.

It is not a matter of plaintiff being more qualified for a position or that she had more seniority within the system. The question is whether the relocation procedure followed as part of the RIF was blind to improper considerations. If indeed, as the uncontroverted evidence points to, individuals were considered for relocation based exclusively on the skills and experience required by their respective occupational groups at the time the decision was made, no discriminatory animus can be inferred.

No position in the same occupational group as the Trainer position held by plaintiff or with similar functional characteristics was created as part of ASC's reorganization. [¶ 26] Rather, plaintiff's occupational group was unique and the duties of her position did not correspond to any of the new openings.

CIVIL NO. 05-2004 (RLA)                                          **Page 27**

As explained by defendant, plaintiff was not relocated to another position because she held one in a singular occupational group with functions that had no similarity to the duties of any of the remaining positions. Most importantly, had plaintiff been included in the list of another occupational group for purposes of relocation or retention, the order of seniority of the employees within the occupational group in which she would have been placed would have been irregularly altered.

With regards to plaintiff's pregnancy discrimination claim based on defendant's failure to rehire her, as previously discussed, the rehiring process did not involve any impermissible motive. Non-selection to new positions was based on residence, a non-discriminatory factor, and was evenly applied to all discharged employees. Accordingly, the evidence on record does not establish discrimination that is, plaintiff failed to prove that she was treated differently in her rejection for rehiring from other non-pregnant employees. *See, i.e.*, In re Carnegie Ctr. Assoc., 129 F.3d 290, 295 (3rd Cir. 1997) ("[T]he PDA does not require that employers treat pregnant employees better than other temporarily disabled employees.")

Accordingly, plaintiff's claims asserted under the Pregnancy Discrimination Act are **DISMISSED.**

CIVIL NO. 05-2004 (RLA)                                        **Page 28**

---

### LAW 100 - SEX DISCRIMINATION

Law 100, the local employment discrimination statute provides for civil liability, *inter alios*, for sex discrimination in employment.[3] The federal and state statutes differ, however, on their respective burden of proof allocations. Ramos v. Davis & Geck, Inc., 167 F.3d 727, 734 (1st Cir. 1999); Alvarez-Fonseca v. Pepsi Cola de Puerto Rico Bottling Co., 152 F.3d 17, 27 (1st Cir. 1998); Varela Teron v. Banco Santander de Puerto Rico, 257 F.Supp.2d 454, 463 (D.P.R. 2003).

The most salient distinction between these two discrimination statutes is that Law 100 establishes a rebuttable presumption of discrimination[4] unless the employer can demonstrate that the action in dispute was justified. Alvarez-Fonseca, 152 F.3d at 27. In contrast to Title VII, in order to dissipate the presumption the employer carries the burden of establishing that its decision was not

---

[3]  In pertinent part, the statute provides:

> Any employer who... fails or refuses to hire or rehire a person... on the basis of... sex... shall incur civil liability....

29 P.R. Laws Ann. § 146.

[4]  In pertinent part § 148 provides:

> Any of the acts mentioned [in section 146] shall be presumed to have been committed in violation [of this law] whenever the same shall have been performed without good cause. This presumption shall be of a controvertible character.

based on impermissible criteria. At this stage the defendant's burden is one of persuasion, not only of production as in Title VII. *Id.*

The Law 100 presumption is triggered when a plaintiff presents evidence that some adverse personnel action was taken without "just cause". The statute initially requires that plaintiff submit proof that the actions complained of - in this case failure to relocate and rehire - were taken without just cause[5] which requires proving three elements: (1) that plaintiff was not relocated and/or rehired; (2) that the failure to relocate and/or rehire was without just cause; and (3) that some basic fact substantiating the type of discrimination alleged. Varela Teron, 257 F.Supp.2d at 463. *See also,* De La Vega, 377 F.3d at 119 (citing Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001)) ("'Under Law 100, a plaintiff establishes a prima facie case of... discrimination by (1) demonstrating that [she] was... discharged, and (2) alleging that the decision was discriminatory.'"); Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 62 (1st Cir. 2005) (sanctioning jury instructions which required plaintiff "to *prove* that she was in a protected class, that she was fired *and* that the termination was *unjustified.*" (italics in original)).

---

[5]   The Puerto Rico Supreme Court has determined that the term "just cause" in Law 100 will be construed in accordance with its definition in Law 80 of May 30, 1976, 29 P.R. Laws Ann. §§ 185a-185k (2002) an analogous statute applicable to unjust terminations of employment. Baez Garcia v. Cooper Labs., Inc., 120 PR Dec. 145, 155 (1987). *See also*, Alvarez-Fonseca, 152 F.3d at 28.

Once a plaintiff proves the termination was "unjust" the burden shifts to the employer. Rodriguez-Torres, 399 F.3d at 62. "[I]n order to rebut the Law 100 presumption, the employer must prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory... animus." Ramos v. Davis & Geck, Inc., 167 F.3d at 734 (citations and internal quotation marks omitted). If the employer proves that its decision was justified the presumption disappears and "the burden of proof on the ultimate issue of discrimination remains with the plaintiff". Alvarez-Fonseca, 152 F.3d at 28.

Despite the different evidentiary paths the parties must follow in proving pregnancy discrimination in this particular case, the result under Law 100 is the same as in the federal claim. We find that even assuming that the presumption of discrimination was triggered, defendant met its burden of presenting ample evidence establishing that its decision not to relocate and/or rehire plaintiff was not motivated by plaintiff's pregnancy whereupon the presumption ceased. Absent the presumptive effect of Law 100 we do not find the necessary substantiation for plaintiff's discriminatory animus claims when considering the totality of the circumstances under which the challenged personnel decisions were made.

Accordingly, the Law 100 claims based on defendant's failure to relocate and/or rehire plaintiff are **DISMISSED.**

### LAW 3 - PREGNANCY DISCRIMINATION

Law 3, the local pregnancy discrimination statute, provides damages and equitable relief to women who are subject to discrimination in employment on account of their pregnancy.[6] The statute specifically provides that employers "cannot, without just cause, discharge a pregnant woman." P.R. Laws Ann. tit. 29, § 469.

Once a woman files suit indicating that she was subject to any of the discriminatory acts prohibited by Law 3, a rebuttable presumption arises and the burden shifts to the employer to prove that its actions were justified. Rivera Aguila v. K-Mart de P.R., 123 D.P.R. 599, 610 (1989).

As previously discussed as part of the Law 100 analysis, defendant adequately addressed its reasons for not transferring plaintiff to another position as part of its reorganization plans as well as for not rehiring her subsequent to her discharge. Faced with this evidence, plaintiff failed to meet her burden to show discriminatory intent based on her pregnancy.

Accordingly, the Law 3 claims are **DISMISSED.**

### LAW 69 - RETALIATION

Law 69 proscribes retaliation in employment against persons who engage in protected conduct under the statute and provides for both civil and criminal liability for violations thereof. P.R. Laws Ann.

---

[6]   The statute makes employers liable if they "dismiss[], suspend[], reduce[] the salary or discriminate[] in any manner against a pregnant woman worker..." § 469.

tit. 29, §§ 1340-41. Similar to the Title VII retaliation claim, we find defendant is entitled to summary judgment on this cause of action. The necessary  evidence to connect plaintiff's jury duty to the challenged personnel actions is simply not there.

Accordingly, the Law 69 claims are **DISMISSED**.

### LAW 80 WRONGFUL DISCHARGE CLAIM

Additionally, plaintiff seeks relief under Law 80, also known as Puerto Rico Wrongful Discharge Act. This statute seeks to protect individuals in their employment by requiring employers to indemnify them if discharged "without just cause". P.R. Laws Ann. tit. 29, § 185a. Pursuant to Law 80, a dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." § 185b. Under the statute, the burden falls on the employer to prove that it had just cause for the termination. § 185k. *See also*, <u>Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.</u>, 152 F.3d 17, 28 (1st Cir.1998). However, Law 80 exempts terminations warranted by "reorganization changes" § 185b(e) provided employee retention takes into consideration seniority within the employee's occupational classification". § 185c.

It is uncontested that plaintiff's termination in employment resulted from a bona fide reorganization. Further, the evidence establishes that seniority as contemplated in Law 80 was complied with. Hence, the Law 80 claims are likewise **DISMISSED**.

**CIVIL NO. 05-2004 (RLA)**                                          **Page 33**

---

### CONCLUSION

Based on the foregoing, defendant's Motion for Summary Judgment (docket No. **48**)[7] is **GRANTED**[8] and the claims asserted in the Second Amended Complaint are hereby **DISMISSED.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 30th day of July, 2007.


                                   <u>S/Raymond L. Acosta</u>
                                    RAYMOND L. ACOSTA
                         United States District Judge

---

[7]   *See also*, Response (docket No.**55**) and Reply (docket No. **62**).

[8]   The Court having disposed of the outstanding claims there is no need to address the alternate grounds raised by defendant in its summary judgment request.